**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| GLORIA RAMIREZ *nee* BOTELLO | § | |
| MARTINEZ, and PASCUAL | § | |
| GUADALUPE RAMIREZ VAZQUEZ, | § | |
| *Individually* | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO: 1:25-cv-00107 |
| | § | |
| KENNETH PAXTON, ATTORNEY | § | |
| GENERAL, ET AL., | § | |
|     *Defendants.* | § | |

## DEFENDANTS' 12(b)(1) and 12(c) MOTION TO DISMISS

Defendants Cameron County, Texas, Sylvia Garza-Perez, and Blanca Bernard file this motion to dismiss Plaintiffs' suit for lack of standing and failure to state a claim upon which relief may be granted, as authorized by Federal Rules of Civil Procedure 12(b)(1) and 12(c).

### A.      INTRODUCTION

**1.1**      Plaintiffs are Gloria Ramirez *nee* Botello Martinez and Pascual Guadalupe Ramirez Vazquez. Defendants are Kenneth Paxton, Texas Attorney General, (hereinafter "Paxton") and Cameron County, Texas, Sylvia Garza-Perez, and Blanca Bernard (hereinafter collectively known as "County Defendants"). Dkt. No. 39.

**1.2**      Plaintiffs asserted four claims against County Defendants:

   **a.** <u>Claim One</u>: Declaratory Judgments pursuant to 28 U.S.C. § 2201-2202 and Chapter 37 of the Texas Civil Practices and Remedies Code, for an alleged *ultra vires* policy, custom, or usage of only applying Texas Family Code § 2.209(c) to formal marriages and not informal marriages which allegedly

*Defendants' Motion to Dismiss*                                      Page **1** of **24**

violates equal protection – Plaintiffs ask the Court to declare the County Defendant's application of § 2.209(c) to only formal marriages unlawful;

**b.** <u>Claim Two</u>: Declaratory Judgments pursuant to 28 U.S.C. § 2201-2202 and Chapter 37 of the Texas Civil Practices and Remedies Code, for allegedly applying Texas Family Code § 2.209(c) only to formal marriages  which violates equal protection and creates an alleged insurmountable burden who have no other remedy at law to amend their information marriage declaration – Plaintiff's ask the Court to declare the statute unconstitutional as applied by County Defendants;

**c.** <u>Claim Three</u>: Declaratory Judgments pursuant to 28 U.S.C. § 2201-2202 and Chapter 37 of the Texas Civil Practices and Remedies Code, alleging that Texas Family Code § 2.209(c) is unconstitutionally vague given that counties inconsistently apply the statute and such vagueness violates Art. XIV, § I, of the United States Constitution and Art. 1 § 19 and § 29 of the Texas Constitution – Plaintiffs ask the Court to so find and to award Plaintiffs all relief they are due at law or equity; and

**d.** <u>Claim Four</u>: a 42 U.S.C. § 1983 allegation of constitutional violations, namely a First and Fourteenth Amendment § 1 equal protection claim that the application of the County's interpretation of the Texas Family Code § 2.209(c) were infringed when Plaintiffs recorded a second informal marriage to correct an error on their first declaration – Plaintiffs seek compensation for their injuries, attorney fees, and costs. Dkt. No. 39, pp 12-15.

**1.3**    The suit is in its infancy. Discovery has not commenced.

**1.4**   On May 27, 2025, Plaintiffs filed their Original Complaint. Dkt. No. 1.

**1.5**   On August 4, 2025, Defendants filed their original answer where they asserted governmental, official, and qualified immunities. Dkt. No. 19, p 9, para 3.2.

**1.6**   On August 19, 2025, Parties filed their Joint Discovery/Case Management Plan. Dkt. No. 21.

**1.7**   On September 2, 2025, Counsel appeared before the court for an initial pretrial conference. Dkt. No. 7.

**1.8**   On September 29, 2025, the Parties filed an Agreed Motion to Abate to seek Attorney General Opinion on Plaintiff's questions. Dkt. No. 30. The Court granted the parties' request. Dkt. No. 32.

**1.9**   On April 18, 2026, the Parties filed an agreed motion to lift the abatement and allow Plaintiffs to file their first amended complaint which now included Defendant Paxton. Dkt. No. 37. On May 1, 2026, the Court granted the request. Dkt. No. 38. Later that same day, Plaintiff filed their amended complaint. Dkt. No. 39.

**1.10**   County Defendant's response is due on May 29, 2026. Dkt. No. 43.

## B.    STATEMENT OF THE ISSUES

**2.1**   Whether Plaintiffs' suit should be dismissed for failure to establish constitutional standing given that their amended complaint neither averred sufficient non-conclusory facts to satisfy that they suffered an "injury in fact" i.e., harm that is concrete and actual or imminent, not merely conjectural or hypothetical.

**2.2**   Whether Plaintiffs failed to state a viable declaratory judgment claim upon which relief may be granted given that they (1) failed to properly plead the existence of a case and controversy and (2) failed to properly allege that the Defendants can sue the Plaintiffs

within the scope of Plaintiffs' alleged causes of action, both of which are required for a declaratory judgment.

**2.3**    Whether Plaintiffs failed to state a claim upon which relief may be granted given that Plaintiffs failed to properly plead that Defendants Garza-Perez' and Bernard's were deliberately indifferent, a required element for a successful 42 U.S.C. § 1983 claim, or to overcome their assertion of qualified immunity.

## C.    STANDARD OF REVIEW

**3.1**    Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed–but early enough not to delay trial—a party may move for judgment on the pleadings." Such a motion may assert the legal defenses of failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(h)(2)(B). The Fifth Circuit Court of Appeals holds that, "[a] motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n. 8 (5th Cir. 2002)).

**3.2**    Rule 12(b)(6) motions test whether the plaintiffs met the Rule 8 and 9 pleading standards. *Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 203 (5th Cir. 2016). A cause of action will ultimately be unsuccessful if its legal theory is not cognizable as a matter of law or if the factual allegations are ruled to be implausible. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989); *Bell Atlantic Corp. v. Twombly*, 55 U.S. 544, 555 & 570 (2007). Under a 12(b)(6) challenge, a court presumes that all well-pleaded allegations are true, resolves all reasonable doubts and inference in the pleader's favor, and views the pleading in the light most favorable to the non-moving party. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009). A claim cannot be dismissed solely

because the trial judge does not believe the allegations or feels that recovery is improbable. *Twombly*, 55 U.S. at 555-56.

**3.3**    "Detailed factual allegations" and evidentiary-level factual showings are not required of pleaders. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555. Rather, they must contain "enough" information to give defendants fair notice of both the complaint's claims and the grounds on which they rest. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). Plaintiffs must demonstrate that their averments "possess enough heft" to show an entitlement to relief. *Twombly*, 550 U.S. at 557. They must allege sufficient facts to raise their claims beyond the level of speculation, through "nudg[ing] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. To navigate to this "realm of plausible liability," plaintiff's allegations must be factual and suggestive but not conclusive or neutral. *Twombly*, 550 U.S. at 557 n.5. Therefore, successful plaintiffs must do more than recite labels, conclusions, and the formulaic elements of a cause of action. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

**3.4**    Resultantly, when determining whether a 12(b)(6) is merited, courts isolate legal conclusions so they may uncover the pleading's purely factual allegations, then those factual allegations are presumed true and examined for plausibility. *Iqbal*, 556 U.S. at 678-79. Only a pleading's facts are presumed true at this stage, not bald assertions, conclusions, or inferences. *Iqbal*, 556 U.S. at 678-79. Legal conclusions "couched" or "masquerading" as facts are deficient. *Twombly*, 550 U.S. at 555. A claim is facially "plausible" when it asserts sufficient factual allegations to allow for reasonable inference that the defendant is liable for unlawful conduct. *Iqbal*, 556 U.S. at 678. To assist in this endeavor, courts may consider extrinsic evidence, such as exhibits attached to the

complaint and documents that the complaint incorporates by reference. *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**3.5**    If a 12(b)(1) motion to dismiss challenges the sufficiency of the allegations of jurisdiction, it is a facial attack, and courts can dismiss for lack of subject-matter jurisdiction based on the complaint alone. *Constitutional Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). In such an attack, the court will accept all material allegations in the live pleading as true and construe them in the light most favorable to the nonmovant. *Id.* at 356 n.12. Legal conclusions couched as facts, however, will not be assumed to be true. *Hile v. Michigan*, 86 F.4th 269, 279 (6th Cir. 2023).  Courts will not look beyond the allegations in the complaint. *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).

### D.    AUTHORITIES

#### 42 U.S.C. § 1983

**4.1** 42 U.S.C. § 1983 does not provide substantial rights; rather, it is an enabling statute which allows Plaintiff to complain of a violation of a constitutionally protected right or a federal statute(s). *Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985). Pursuant to *Farmer v. Brennan*, 511 U.S. 825, 840 (1994) and *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989), Plaintiff must allege and establish the following for liability in a § 1983 suit:

a.  A person;
b.  Acting under color of state law;
c.  Caused by the deprivation of a plaintiff's right secured by the Constitution and laws of the United States;
d.  By acting with deliberate indifference to those rights.

§ 1983 Elements: "Acting Under Color of State Law"

**4.2**    The Court in *West v. Akins*, 487 U.S. 42, 49 (1988), explained that the "traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised [a misuse of] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). It further clarified:

> **It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.**

487 U.S. at 49-50 (internal citations and quotations omitted).

§ 1983 Elements: "Deprived of a Right Secured by the Constitution"

**4.3**    § 1983 does not create substantive rights but "merely provides remedies for deprivations of rights established elsewhere." *Tuttle*, 471 U.S. at 812.

§ 1983 Elements: Deliberate Indifference

**4.4**    In a § 1983 suit, a plaintiff must also establish that the alleged constitutional violation was done with "deliberate indifference" to clearly established constitutional rights. *Farmer*, 511 U.S. at 840; *City of Canton*, 489 U.S. at 388-90. This does not equate to negligence. 511 U.S. at 835. Nor is it gross negligence. 489 U.S. at 388. It "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence to his action." *Board of County Commissioners of Bryant County v. Brown*, 520 U.S. 397 (1997). In *Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996), the Fifth Circuit equated deliberate indifference with the criminal law standard of *mens rea* recklessness standard in which a person disregards a risk of harm that he is aware of. "Actions and decisions by officials that are merely inept,

erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999). The standard of deliberate indifference is higher than negligence or even gross negligence to establish that an official acted or failed to act. 520 U.S. at 407.

## Qualified Immunity

4.5    There is a presumption that an individual defendant is entitled to federal qualified immunity. *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994). "Qualified immunity is an immunity from suit rather than a mere defense to a liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009). Qualified immunity is an affirmative defense that the defendant official has the burden of pleading. *Britton*, 523 U.S. at 587. Once that defense is raised, the burden is then on the plaintiff to prove that the government official is not entitled to qualified immunity. *Wyatt v. Fletcher*, 718 F.3d 496, 510 (5th Cir. 2013).

4.6    To establish that an individual defendant is not entitled to qualified immunity, a plaintiff must satisfy a three prong test: (1) assert a violation of a constitutional right; (2) show that the right was clearly established at the time of the defendant's actions; and (3) show that the defendant's actions were objectively unreasonable. *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995). A "clearly established" right must be sufficiently clear that every reasonable official would have understood what he is doing violates that right. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2078 (2011). "[T]he relevant question is whether a reasonable officer or public official could have believed that his conduct was lawful in light of clearly established law and information possessed by him." *Thomas*, 107 F.Supp. 2d at 756, *quoting Malley v. Briggs*, 475 U.S.

335, 341 (1986). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 131 S.Ct. at 2085.

**4.7**    In *Kisela v. Hughes*, 138 S.Ct. 1148 (2018), the Court reaffirmed that public officials "are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *quoting Mullenix v. Luna*, 136 S.Ct. 305, 309 (2015). "[C]aselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kiesela*, 138 S.Ct. at 1152, *quoting White v. Pauly*, 137 S.Ct. 548 (2017).

## **Declaratory Judgment Act**

**4.8**    "In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201(a). The Declaratory Judgment Act (28 U.S.C.A. §§ 2201, 2202), similar to a § 1983 claim, does not create an independent cause of action; rather, it provides a form of relief. *Aetna Life Ins. V. Haworth*, 300 U.S. 227, 240 (1937). "To be clear, the Act cannot create a cause of action where there is no risk of the future lawsuit from which the plaintiffs seek prospective relief, as there is no case or controversy…[b]ut so long as the defendant in a declaratory judgment suit can sue the plaintiff for an action the defendant is responsible for (within the scope of the proposed cause of action), the independent cause of action required for a declaratory judgment claim exists." *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 933 (5th Cir. 2023); *citing Collin Cty. v. Homeowners Ass'n for Values Essential to*

*Neighborhoods, (HAVEN)*, 915 F.2d 167, 170-71 (5th Cir. 1990); *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir. 1984).

**4.9**    Relief is only available when there is an actual, substantial case or controversy between the parties whose adverse legal interests are of sufficient immediacy and reality. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007). The dispute must be definite and concrete, not hypothetical or speculative. *Id.*, at 127. "The declaratory judgment device does not ... permit litigants to invoke the power of [a court] to obtain constitutional rulings in advance of necessity." *Poe v. Ullman*, 367 U.S. 497, 506 (1961). "In the absence of contemporary enforcement, we have said that a plaintiff claiming standing must show that the likelihood of future enforcement is 'substantial.'" *California v. Texas*, 141 S.Ct. 2104, 2115 (2021); *quoting Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014). Moreover, the Declaratory Judgment Act, alone, does not provide a court with jurisdiction. 141 S.Ct. at 2115. The Constitution gives federal courts the authority to decide cases which contain actual cases and controversies which equate to standing. Art. III, § 2. A plaintiff has standing only if she can "allege a personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).

**4.10**    Such an action is proper when the judgment will both (1) serve a useful purpose in clarifying and settling legal relations at issue and (2) provide relief from the uncertainty, insecurity, and controversy giving rise to the suit.

### *Ultra Vires* **Exception to Sovereign Immunity**

**4.11**    Under common law, "[t]he ultra vires exception to sovereign immunity ... provides that 'where the officer's powers are limited by statute, his actions beyond those limitations

are considered individual and not sovereign actions.'" *Apter v. Dep't of Health & Human Serv.*, 80 F.4th 579, 587 (5th Cir. 2023); *citing Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011); *quoting Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949). "Such actions are 'ultra vires [*i.e.* beyond] his authority and therefore may be made the object of specific relief.'" *Id.* "To invoke this exception, a plaintiff must 'do more than simply allege that the actions of the officer are illegal or unauthorized.'" *Apter*, 80 F.4th at 587-88; *citing Danos*, 652 F.3d at 583; *quoting Larson*, 337 U.S. at 689. "The complaint must allege facts sufficient to establish that the officer was acting 'without any authority whatever,' or without any 'colorable basis for the exercise of authority.'" *Id.* "Under the common-law *ultra vires* doctrine, then a strong merits argument is needed to overcome sovereign immunity—even at the pleading stage." *Apter*, 80 F.4th at 588.

## Fourteenth Amendment

**4.12**   "No State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The United Supreme Court expounded on this concept by acknowledging that the Fourteenth Amendment, "must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups of persons." *Romer v. Evans*, 517 U.S. 620, 631 (1996). The Court in *United States v. Skrmetti*, 145 S.Ct. 1816, 1828 (2025), recognized "[w]e have reconciled the principle of equal protections with the reality of legislative classification by holding that, 'if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end.'" *Id.*; *quoting Romer*, 517 U.S. at 631. "We generally afford such laws 'wide latitude' under this rational basis review, acknowledging that 'the Constitution presumes that even improvident decisions will eventually be rectified by the

democratic process." *Id.*; *quoting Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440 (1985).

**Texas Family Code**

4.13    The Texas Family Code allows for both formal marriages and marriages without formalities, i.e. informal marriages or common law marriages. Tex. Fam. Code Ch. 2 (§ 2.001 to § 2.602).

4.14    Subchapter A. – Application for Marriage License (§ 2.001 to § 2.03), of Chapter 2 of the Texas Family Code allows couples to apply for a marriage license. Tex. Fam. Code § 2.002. The license must have specific language such as being titled "Application for Marriage License, _____ County, Texas." Tex. Fam. Code § 2.004(b)(1).

4.15    Subchapter B. – Ceremony and Return of License (§ 2.201 to § 2.24), allows for amendments to marriage licenses:

> **If one or both parties to a marriage license discover an error on the recorded marriage license, both parties to the marriage shall execute a notarized affidavit stating the error. The county clerk shall file and record the affidavit as an amendment to the marriage license, and the affidavit is considered part of the marriage license. The clerk shall include a copy of the affidavit with any future certified copy of the marriage license issued by the clerk.**
>
> **Tex. Fam. Code Ann. § 2.209**

4.16    Subchapter E. – Mariage with Formalities (§ 2.401 to § 2.48), allows couples to apply for a "Declaration and Registration of Informal Marriage, _____ County, Texas." Tex. Fam. Code § 2.402. In recording of certificates or declarations of informal marriages, refers to "certificates of informal marriage" and "declarations".

Tex. Fam. Code § 2.404.  The Declaration of Informal Marriage is identified as the form couples fill out to identify their informal marriage. *Id*. The Certificate of Informal Marriage is the written proof showing that an informal marriage has been registered. Tex. Fam. Code § 2.404.

## Texas Constitution

4.17    Article 1, Section 19 of the Texas Constitution states, "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

4.18    Article 1, Section 29 of the Texas Constitution states, "[t]o guard against transgressions of the high powers herein delegated, we declare that every thing in this 'Bill of Rights' is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions shall be void." When the constitutionality of a statute is challenged, as it is here, Texas courts begin their review with the presumption of validity, and the burden is on the plaintiff attacking the statute to establish its unconstitutionality. *Andrews v. Wilson*, 959 S.W.2d 686, 689 (Tex. App.—Amarillo 1998), rev'd other grounds, 10 S.W.3d 663, 670 (Tex. 1999)(Under facial challenge to constitutionality of statute, challenger must demonstrate that the statute always operates unconstitutionally).

## E.  ARGUMENT

5.1    Plaintiffs' suit should be dismissed as a matter of law for (1) failure to establish standing (2) failure to state a claim upon which relief may be granted, and (3) failure to overcome qualified immunity.

**5.2**    Plaintiffs alleged in their complaint that on October 4, 2023, they decided to register their marriage by filing a declaration of informal marriage form[1] with the Cameron County Clerk. Dkt. No. 39, p. 8, para. 21. At some point prior to April 25, 2024, Plaintiffs discovered an error on the declaration. *Id.* at pp 8-9, para. 23. In an attempt to fix the error, Plaintiffs followed Texas Family Code, Chapter 2, Subchapter C § 2.209(c), and executed an affidavit that identified the error. *Id.* at p. 9, para. 24. Defendant Blanca Bernard supposedly informed Plaintiffs that the affidavit was inapplicable to their scenario as error-identifying affidavits applied to marriage licenses, not informal marriage declarations.  *Id.* at para. 25. Rather, Defendant Bernard told Plaintiffs to file a second Declaration of Informal Marriage with the correction which would nullify the first Declaration. *Id.* Plaintiffs fear that having two Declarations will subject them to criminal prosecution for perjury and have possible negative immigration consequences. *Id.* at p. 10, para. 29; *Id.* at p. 11, para 34.

**5.3**    As relevant to this suit, there are two types of marriages in Texas: formal and informal—colloquially known as common law marriage. Texas Family Code, Chapter 2, Subchapter A, § 2.002 to § 2.014, delineates the process for the application of a formal "marriage license".[2] Texas Family Code, Chapter 2, Subchapter E, § 2.403 to § 2.405, delineates the process for the declaration of an informal marriage.[3] Specifically, § 2.404 requires a county clerk to determine all the necessary information is recorded on a "declaration of informal marriage

---

[1] Tex. Fam. Code § 2.402 – Declaration and Registration of Informal Marriage.
[2] Subchapter A uses the terms "marriage license" and "license" interchangeably.
[3] Subchapter E uses the terms "declaration of inform marriage" and "declaration" interchangeably.

*Defendants' Motion to Dismiss*                                                                  Page **14** of **24**

form," and upon execution of the declaration, the county clerk shall submit a copy of the "declaration" to the bureau of vital statistics. Tex. Fam. Code. The county clerk may prepare a "certificate of informal marriage" as well, although this is not submitted to the bureau. Tex. Fam. Code § 2.404(c).

5.4    It is important to note the Code's distinction between "marriage license or license" and "declaration or certificate," because Texas Family Code § 2.209(c) states that if a "marriage license" error is discovered, the married couple "shall execute a notarized affidavit stating the error."[4] § 2.209(c) is silent as to declarations or certificates. *Id.* Tex. Fam. Code. Section 2.209(d), further states, "[t]he executive commissioner of the Health and Human Services Commission by rule shall prescribe the form of the affidavit under Subsection (c)." Tex. Fam. Code. Moreover, neither Chapter 2 nor its Subchapters A, C, or E, conflate "marriage license/license" with "declaration of informal marriage/declaration". Furthermore, the Texas Code Construction Act states, "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." Tex. Gov't. Code § 311.011(b).

5.5    Defendants interpret the legislature's distinction and usage of the terms "marriage license/license" and "declaration of informal marriage/declaration" as clear and unambiguous words and phrases that have acquired a particular meaning. In the alternative, if Texas Government Code § 311.011(a) were to apply, these words and

---

[4] "If one or both parties to a **marriage license** discover an error on the recorded **marriage license**, both parties to the marriage shall execute a notarized affidavit stating the error. The county clerk shall file and record the affidavit as an amendment to the **marriage license**, and the affidavit is considered part of the **marriage license**. The clerk shall include a copy of the affidavit with any future certified copy of the **marriage license** issued by the clerk." (emphasis added) Tex. Fam. Code § 2.209(c)

phrases, read in context and construed according to the rules of grammar and common usage, highlight the Legislature's intent to distinguish between the two forms of marriage: formal and informal; and thus, the Legislature's intention to apply error-identifying affidavits to marriage licenses and not informal marriage declarations.

5.6    Plaintiffs, on the other hand, complain that Defendants' distinction of Texas Family Code § 2.404's "declaration" from § 2.209(c)'s "license" as having a potentially negative effect on their immigration status and may result in perjury.

## Lack of Standing

**Issue No. 1: Whether Plaintiffs' suit should be dismissed for failure to establish constitutional standing given that their amended complaint neither averred sufficient non-conclusory facts to satisfy that they suffered an "injury in fact" i.e., harm that is concrete and actual or imminent, not merely conjectural or hypothetical.**

5.7    Plaintiffs' suit should be dismissed as a matter of law given that their live pleading failed to establish standing.

5.8    An injury must be "concrete and particularized" and "actual or imminent." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992). At the crux of Plaintiffs' complaint is a concern that their perceived inability to amend their informal marriage declaration will negatively impact their immigration proceedings. Dkt. No. 39, p. 10, para 29-30. However, the live pleading is devoid of any factual assertions that this alleged inability has concretely and particularly, actually or imminently negatively impacted their immigration proceedings. Rather, there is a fear that having two informal marriage declarations *may* have a negative impact. This fear, without legal or factual justification, does not meet the injury threshold.

**5.9** In the alternative, Plaintiffs fear the criminal prosecution of perjury. Dkt. No. 10, p. 11, paras. 34-35. "[A] plaintiff can demonstrate a cognizable injury in a pre-enforcement challenge only if it establishes that (1) it has 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute,' and (2) 'there exists a credible threat of prosecution thereunder." *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 924-925 (5th Cir. 2024) (*quoting Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). Although Plaintiffs are not required to violate the law and expose themselves to potential penalties, they need to show a "genuine threat" of enforcement through a "history of past prosecution or enforcement under the challenged statute." (inner citations omitted) *Braidwood Mgmt., Inc.*, 70 F.4th 925-926. Unlike the plaintiff in *Braidwood MGMT, Inc.*, at no point throughout Plaintiffs' seventeen-page complaint do they identify or give examples of past prosecution under this statute. Dkt. No. 39. Rather, they show the opposite. Plaintiffs alleged that the requirement making informal declarants file a second declaration was common practice and was recommended by the Deputy Clerk. *Id.* at 9, para 25. Such a practice, without prosecution or enforcement of the state's perjury statute, goes to show that there is no credible threat of prosecution thereunder.

**5.10** Consequently, Plaintiffs failed to establish an injury in fact as their fear of negative immigration consequences or prosecution for perjury, under the circumstances they asserted, are merely conjectural or hypothetical.

**12(c)(1)**

**Issue No. 2: Whether Plaintiffs failed to state a viable declaratory judgment claim upon which relief may be granted given that they (1) failed to properly plead the existence of a case and controversy and (2) failed to properly allege that the Defendants can sue the Plaintiffs within the scope of Plaintiffs' alleged causes of action, both of which are required for a declaratory judgment.**

**5.11**    The Declaratory Judgment Act is the improper vehicle for Plaintiffs' suit as (1) there is no case and controversy; and (2) Defendants in this suit cannot sue Plaintiffs for an action the Defendants are responsible for within the scope of their alleged causes of action. Therefore, the independent causes of action required for this declaratory judgment claim do not exist. 28 U.S.C. §§ 2201, 2202. Consequently, Plaintiffs failed to state a claim upon which relief may be granted as they did not allege sufficient, well-pleaded, non-conclusory facts to demonstrate a concrete and particularized and actual or imminent injury. Furthermore, Plaintiffs did not allege facts to demonstrate a cognizable injury in a pre-enforcement challenge. Although Plaintiffs averred that they (1) have intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute (i.e., the execution of an error-correcting affidavit); they failed to allege (2) there exists *a credible threat of prosecution thereunder by the Defendants*. (emphasis added). The lack of credible threat is underscored because Plaintiffs failed to allege a history of past prosecution or enforcement by Defendants under the challenged Texas Family Code statutes.

**5.12**    The Declaratory Judgment Act does not create an independent cause of action; rather, it provides a form of relief. *Marriott Int'l, Inc. v. Danna*, 772 Fed.Appx. 42, 45 (5th Cir. 2019). Federal courts have the power to hear declaratory-judgment actions only if the case is within its subject-matter jurisdiction and involves an actual controversy. 28 U.S.C.

§ 2201(a). The Act is not an independent source of subject-matter jurisdiction. *Rivero v. Fidelity Invs.*, 1 F.4th 340, 343 (5th Cir. 2021). Resultantly, such an action must satisfy the well-pleaded-complaint rule—meaning, jurisdiction must be facial in the complaint. *Skelly Oil Co. v. Phillips Pet. Co.*, 339 U.S. 667, 672 (1950) (mere existence of question of federal law in suit is not proof that federal law is basis of suit). Jurisdiction over a declaratory-judgment action can be based on federal-question jurisdiction; however, it is difficult as the trial court must first hypothetically assume that the declaratory-judgment defendant, who would normally be the plaintiff in a traditional suit for damages or an injunction, filed suit first. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 196-197 (2014). Next, the trial court must determine (1) if such a suit would arise under federal law or (2) if some element of the claim would necessarily depend on the resolution of a substantial, disputed question of federal law. *Id.* at 197-88 (declaratory judgment action challenging declaratory-judgment D's assertions of infringement arose under federal patent law because the declaratory-judgment D could have terminated license and brought ordinary federal patent action for infringement).

**5.13** To have a case and controversy, there must be standing. *California*, 593 U.S. at 669. Plaintiffs have standing only when they can allege personal injury fairly traceable to the defendants' allegedly unlawful conduct and likely to be addressed by the requested relief. *DaimlerChrysler Corp.*, 547 U.S. at 342. Here, like in *California*, Plaintiffs fear future punishment: possible immigration consequences and perjury, both of which are not enforced by Defendants. These proposed injuries are neither concrete nor fairly traceable to the Defendants' "allegedly unlawful conduct". *Allen v. Wright*, 468 U.S. 737, 751 (1984). Moreover, Plaintiffs failed to show that the Defendants will act to enforce negative immigration consequences or charge Plaintiffs with perjury—which would be

absurd considering Plaintiffs alleged that the County's policy of requiring a new declaration of informal marriage is the standard protocol to amend a clerical error. Additionally, Plaintiffs failed to allege that Defendants have the legal authority or means to negatively decide Plaintiff Ramirez' immigration status or prosecute Plaintiffs for perjury. The Court in *California*, stated it has "consistently spoken of the need to assert an injury that is the result of a statute's actual or threatened *enforcement*, [by the Defendant] whether today or in the future." *California*, 593 U.S. at 670.

5.14   Additionally, Plaintiffs failed to address redressability in their request for relief. Plaintiffs seek to (1) declare the County's application of the Texas Family Code  2.209(c) unlawful (2) declare the statute unconstitutional as applied by Cameron County, Texas, (3) declare the statute void for vagueness, and (4) to award plaintiffs all relief they are due at law or equity even if not stated in this complaint." Dkt. No. 39, pp. 12-15. However, *arguendo*, even if Plaintiffs' relief were to be granted, the two informal marriage declarations that Plaintiffs are complaining of would still be in play and their fears not excised. Going one step further, presuming the Court issued an order to the Texas Department of State Health Services to replace the second declaration with an error-correcting affidavit, this does not necessarily remediate Plaintiffs' fears of negative immigration consequences or unfounded threat of perjury.

5.15   As it relates to Plaintiffs' contentions that Texas Family Code § 2.209 is constitutionally vague, it is not. The language is clear. To amend a license, an affidavit is necessary. Plaintiffs do not have licenses. They have declarations and certificates. For Plaintiffs to assert an equal protection claim under the Fourteenth Amendment, they must properly plead that "1) [they] were treated differently than persons similarly situated to [them], and 2) that such treatment stemmed from discriminatory intent."

*Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). "Discriminatory intent requires a showing that 'the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on an identifiable group." *Washington v. Jones*, 585 F.Supp.3d 871, 877 (W.D. La. 2022) (*quoting William*, 180 F.3d at 705.) Plaintiffs did not aver discriminatory intent or that County Defendants or the State of Texas enacted, interpreted, or applied the law to for the purpose of causing adverse effects. Therefore, Plaintiffs did not establish an equal protection violation.

5.16   In the end, Plaintiffs' failure to state a claim upon which relief may be granted; consequently, the Court should dismiss this case as a matter of law.

**Issue No. 3: Whether Plaintiffs failed to state a claim upon which relief may be granted given that they failed to properly plead Defendants' deliberate indifference or overcome County Defendants' assertion of qualified immunity, a required element for a successful 42 U.S.C. § 1983 claim.**

5.17   Plaintiffs failed to properly allege that the Defendants Garza-Perez or Bernard acted with deliberate indifference, a necessary element of a successful § 1983 claim. Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence to his action." *Board of County Commissioners of Bryant County v. Brown*, 520 U.S. 397 (1997). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999). The standard of deliberate indifference is higher than negligence or even gross negligence to establish that an official acted or failed to act. 520 U.S. at 407. Plaintiffs conceded that the Defendants' application of Texas Family Code § 2.209 is not uncommon given that out of twenty-one counties, six counties,

including Cameron County, allowed for the filing of a second declaration. Dkt. No. 39, pp 9-10, para 25. Further, Plaintiffs alleged that Defendants acted upon the legal interpretation of the County Attorney which goes to show thought and consideration of proper application of the statutes, not a deliberate indifference to it. Dkt. No. 39, p. 4, para 12. Consequently, Plaintiffs failed to support their contention that the alleged constitutional violation was done with "deliberate indifference" to a clearly established constitutional right given that the underlying statute, according to Plaintiffs, is not uniformly applied.

5.18    Moreover, Garza-Perez and Bernard assert qualified immunity. As such, Plaintiff must show that the constitutional right was clearly established at the time of the defendant's actions and show that the defendant's actions were objectively unreasonable. *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995). A "clearly established" right must be sufficiently clear that every reasonable official would have understood what he is doing violates that right. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2078 (2011). "[T]he relevant question is whether a reasonable officer or public official could have believed that his conduct was lawful in light of clearly established law and information possessed by him." *Thomas*, 107 F.Supp. 2d at 756, *quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986). Again, because Plaintiffs asserted that two sets of counties applied the statute differently, Plaintiffs fail to overcome qualified immunity.

5.19    Therefore, this cause of action should be dismissed as a matter of law.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, County Defendants would respectfully request that Plaintiffs' claims be dismissed for failure to establish standing and failure to state a claim upon which relief can be granted, and that County Defendants be granted

such other and further relief to which they may show themselves to be justly entitled,

whether general or special, at law and in equity.

Respectfully submitted,
COMMISSIONERS COURT-
CIVIL LEGAL DIVISION
1100 East Monroe Street
Brownsville, Texas 78520
Telephone: (956) 550-1345
Facsimile: (956) 550-1348

By: /s/ *Daniel N. Lopez*
Daniel N. Lopez
Associate Counsel
Texas State Bar No. 24086699
Southern District No. 3182267
daniel.n.lopez@co.cameron.tx.us

Juan A. Gonzalez
Attorney in Charge
Texas State Bar No. 08129310
Southern District No. 3472
juan.gonzalez@co.cameron.tx.us

**CERTIFICATE OF SERVICE**

I, Daniel N. Lopez, do hereby certify that service of a true and correct copy of the foregoing document will be sent to the following and electronically filed and sent to all counsel of record via the Court's Automatic Filing System, this 29th day of May, 2026:

*/s/ Daniel N. Lopez*
Daniel N. Lopez